J-S42034-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DERECK JEROME TURNER | : | |
| | : | |
| Appellant | : | No. 1568 EDA 2019 |

Appeal from the Judgment of Sentence Entered March 1, 2019
in the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0007618-2017

BEFORE:  PANELLA, P.J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED: DECEMBER 29, 2020**

Dereck Jerome Turner ("Turner") appeals from the judgment of sentence imposed following his convictions of two counts of aggravated assault, and one count each of possession of an instrument of crime, and harassment.[1]  We affirm.

On June 9, 2017, Thomas Austin ("Austin") conversed with Ivan Paxton ("Paxton"), his neighbor, near the front gate of Austin's property at Elmhurst Avenue in Winder Village, Bristol Township, Bucks County.  As they spoke, Turner approached the front gate screaming about an interaction he had with an individual named Sam Love ("Love").  Austin told Turner to leave the area because he was being loud and unruly.  Turner left, but shortly thereafter

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1), (4), 907(a), 2709(a)(1).

returned holding a knife.  Austin again told Turner to leave and attempted to escort Turner off of his property.  A brief fight ensued and ended when Austin yelled out, "I'm cut," after which Turner ran away.

Austin's wife and Paxton called 911.  The Bristol Township Police responded and administered first aid to Austin.  An ambulance arrived shortly thereafter and transported Austin to Torresdale Hospital.  After speaking with Austin's wife, the police searched for Turner.  A short time later, the police found Turner, who was sweating profusely, and appeared confused and disoriented.  Turner told the police that Love had stabbed Austin.

Austin was treated by George Tsiotsias, M.D. ("Dr. Tsiotsias"), who diagnosed Austin with a partially collapsed lung, blood in his chest, a fractured rib, and a lacerated liver.  Austin required multiple emergency blood transfusions.  Dr. Tsiotsias determined that the injuries were all the result of Austin's stab wound.  Austin stayed in the Intensive Care Unit for 9 days.

On December 6, 2017, police charged Turner with two counts of aggravated assault, and one count each of prohibited offensive weapons, possession of an instrument of crime, recklessly endangering another person, simple assault, and harassment.

Prior to trial, the Commonwealth filed a Pre-Trial Motion seeking to preclude Turner from introducing evidence of Austin's prior crimen falsi convictions for robbery and retail theft as impeachment evidence. Additionally, Turner presented an oral Motion seeking to introduce Austin's

prior *crimen falsi* convictions for robbery and burglary as impeachment evidence. The trial court granted the Commonwealth's Motion, denied Turner's oral Motion, and precluded Turner from introducing evidence of Austin's *crimen falsi* convictions.

At the close of the Commonwealth's evidence at trial, Turner presented an oral Motion to dismiss all charges. The trial court granted Turner's oral Motion with regard to the charge of prohibited offensive weapons, but denied Turner's Motion with regard to the remaining offenses. Prior to charging the jury, the Commonwealth withdrew the charges of recklessly endangering another person, and simple assault. Ultimately, the jury convicted Turner of two counts of aggravated assault, and one count each of possession of an instrument of crime and harassment. The trial court deferred sentencing in order for a pre-sentence investigation report to be prepared. On February 28, 2019, the trial court sentenced Turner to a period of 10 to 20 years in prison.

On March 11, 2019, Turner filed a Post-Sentence Motion and a Motion for Reconsideration of Sentence.[2] Additionally, on March 20, 2019, Turner

---

[2] Because the tenth day following the imposition of sentence was Sunday, March 10, 2019, Turner's Motions were timely filed. **See** 1 Pa.C.S.A. § 1908 (providing that "[w]henever the last day of any such period shall fall on Saturday or Sunday … such day shall be omitted from the computation.").

filed a Motion for Weight of the Evidence Claim.[3, 4]  On April 3 and 25, 2019, before the trial court ruled on his Post-Sentence Motions, Turner filed *pro se* Notices of Appeal.[5, 6]  Additionally, Turner filed a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

---

[3] We note that Turner's three Post-Sentence Motions do not appear in the certified record before this Court.  **See Commonwealth v. Bongiorno**, 905 A.2d 998, 1001 (Pa. Super. 2006) (stating that an appellant has a duty to ensure that the record on appeal is complete and enables this Court to review all claims raised on appeal).

[4] Turner's third Post-Sentence Motion is untimely filed and, thus, all claims contained within that Post-Sentence Motion are not preserved for our review.  **See** Pa.R.A.P. 720(A)(1) (providing that a defendant has 10 days, after judgment of sentence, to file a post-sentence motion); **see also Commonwealth v. Feucht**, 955 A.2d 377, 383 (Pa. Super. 2008) (stating that untimely post-sentence motions cannot preserve claims).

[5] At the time that Turner filed his Notices of Appeal, he was represented by counsel.  In this Commonwealth, hybrid representation is not permitted.  **See Commonwealth v. Jette**, 23 A.3d 1032, 1036 (Pa. 2011).  However, this Court is required to docket a *pro se* notice of appeal even when the defendant is represented by counsel.  **See Commonwealth v. Williams**, 151 A.3d 621, 624 (Pa. Super. 2016) (stating that "[b]ecause a notice of appeal protects a constitutional right … this Court is required to docket a *pro se* notice of appeal despite [a]ppellant being represented by counsel") (citations omitted).

[6] After Turner filed his Notices of Appeal, this Court issued a Rule to show cause why Turner's appeals should not be quashed as interlocutory, as the trial court had not yet ruled on his Post-Sentence Motions.  Turner submitted a Response, indicating that he had filed his Notices of Appeal prematurely, but that the trial court had since entered an Order denying Turner's Post-Sentence Motions by operation of law, pursuant to Pa.R.Crim.P. 720(B)(3)(b).  We acknowledge that the denial of Turner's Post-Sentence Motions did not occur until after he had filed his Notices of Appeal.  However, we will address Turner's appeal.  **See** Pa.R.A.P. 905(a)(5) (providing that a notice of appeal "filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry on the day thereof.").

Turner now raises the following claims:

1. Did the trial court abuse its discretion by not allowing a Commonwealth witness to be impeached by evidence of that witness' prior *crimen falsi* convictions for burglary and robbery?

2. Was the jury verdict against the weight of the evidence when the victim initially assaulted [Turner], no weapon was ever recovered[,] and the eyewitnesses to the incident had inconsistent accounts of the event?

Brief for Appellant at 5.

In his first issue, Turner claims that the trial court abused its discretion by denying his pre-trial oral Motion to introduce Austin's *crimen falsi* convictions for burglary and robbery. *Id.* at 14. Turner acknowledges that more than 10 years had passed since Austin's convictions. *Id.* at 14-15. However, Turner claims that the probative value of Austin's convictions outweighed their prejudicial value, because Austin's version of events conflicted with another Commonwealth witness's testimony. *Id.* at 15.

"Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the [trial] court's decision on such a question absent a clear abuse of discretion. ***Commonwealth v. Harris***, 884 A.2d 920, 924 (Pa. Super. 2005) (citations omitted). "An abuse of discretion is not merely an error of judgment but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Commonwealth v. Hyland***, 875 A.2d 1175, 1186 (Pa. Super. 2005) (citations omitted).

Pennsylvania Rule of Evidence 609 provides, in relevant part, as follows:

**Rule 609. Impeachment by evidence of conviction of crime**

**(a) General Rule.** For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or *nolo contendere*, shall be admitted if it involved dishonesty or false statement.

**(b) Time Limit.** Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interest of justice, that the probative value of the conviction outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

Pa.R.E. 609(a), (b).

Generally, robbery and burglary are considered *crimen falsi* offenses, and convictions for these offenses are admissible for impeachment purposes. *Harris*, 884 A.2d at 925. When determining whether such convictions should be admitted, the trial court should weigh the following factors:

1) the degree to which the commission of the prior offense reflects upon the veracity of the [witness]; 2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the [witness] … rather than provide a legitimate reason for discrediting him as an untruthful person; 3) the age and circumstances of the [witness]; 4) … and the [party's] need to resort to this evidence as compared with the availability … of other witnesses through which its version of the events surrounding the incident can be presented; and 5) the existence of alternative means of attacking the [witness's] credibility.

*Commonwealth v. Cascardo*, 981 A.2d 245, 255 (Pa. Super. 2009) (quotations omitted). Additionally, Rule 609 does not differentiate between a witness and a defendant witness. *See Commonwealth v. Howard*, 823 A.2d 911, 913 (Pa. Super. 2003) (explaining that Rule 609 states "any witness" and does not distinguish between a defendant and any other witness) (citing Pa.R.E. 609).

In its Opinion, the trial court stated the following:

> [W]e note that the only mention of burglary [committed by Austin] is a statement by defense counsel that he believed [Austin] also had a burglary conviction. This statement appears to be pure speculation. Obviously, we could not permit impeachment based only on speculation.
>
> * * *
>
> [Additionally,] evidence of either [of Austin's] conviction[s] is presumptively inadmissible. It would be naive to conclude a lay fact finder is capable of eradicating the prejudice which results from the knowledge of a witness' prior criminal record. [Austin's] conviction for robbery was [29] years old and [Austin's] conviction for retail theft was [37] years old. The greater the remoteness of a prior conviction, the less probative value it possesses. Additionally, since his release from custody [29] years ago, [Austin] has led a legally blameless life. We also permitted the testimony of two different cousins of [Turner] regarding their observations of prior contacts between [Austin] and [Turner,] which were contrary to the testimony of [Austin]. Accordingly, we were unable to conclude that the probative value of the proposed impeachment evidence substantially outweighed its prejudicial effect. Therefore, we denied [Turner]'s [M]otion to impeach a Commonwealth witness by evidence of criminal convictions that [occurred 29 and 37 years ago].

Trial Court Opinion, 3/6/20, at 4, 7.

We agree with the sound reasoning of the trial court, as set forth above, and affirm on this basis with regard to Turner's first claim. ***See id.*** Additionally, our review of the record reveals that the trial court aptly considered the relevant factors in ***Cascardo***, and we discern no abuse of discretion in this regard. ***See Cascardo***, ***supra***; ***Harris***, ***supra***. Accordingly, we cannot grant Turner relief on this claim.

In his second claim, Turner challenges the verdict as against the weight of the evidence. ***See*** Brief for Appellant at 16. Turner asserts that Austin and Paxton presented conflicting testimony. ***Id.*** Specifically, Turner claims that Austin testified he punched Turner several times, but Paxton testified that Austin had never punched Turner. ***Id.*** at 15-16. Additionally, Turner asserts that Paxton observed Turner carrying a large knife, but Austin never saw Turner carrying a knife. ***Id.*** at 16. Turner argues that the police never recovered a knife, and when the police found Turner, there was no blood on his person or his clothing. ***Id.*** Further, Turner contends that the two defense witnesses, Karl Williams ("Williams") and Kelvin Jefferson ("Jefferson"), testified that Austin was often aggressive with Turner in the past. ***Id.*** at 17-18.

Our standard of review related to a challenge to the verdict as against the weight of the evidence is well settled.

> The weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, part, or none of the evidence and to determine the credibility of witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we

may only reverse the … verdict if it is so contrary to the evidence as to shock one's sense of justice.

***Commonwealth v. Small***, 741 A.2d 666, 672-73 (Pa. 1999). We are mindful that "[q]uestions concerning inconsistent testimony … go to the credibility of witnesses." ***Commonwealth v. DeJesus***, 860 A.2d 102, 107 (Pa. 2004). Appellate courts may not substitute their judgment for that of the jury on issues of credibility. ***Id.***

As we noted *supra*, Turner failed to preserve this claim by including it in a timely filed post-sentence motion.[7] ***See*** Pa.R.A.P. 720(A)(1); ***see also Feucht***, ***supra***. Accordingly, we can grant him no relief on this claim.

Judgement of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/29/20

---

[7] We note that Turner's third Post-Sentence Motion, titled "Motion for Weight of the Evidence Claim," was untimely filed. Again, we note that none of Turner's Post-Sentence Motions appear in the certified record and, thus, we cannot confirm whether he attempted to preserve his weight claim in either of the remaining Motions. ***See Bongiorno***, ***supra***. Additionally, we observe that, even if Turner had not waived this claim, the trial court has aptly addressed Turner's weight claim in its Opinion, and we would affirm on the basis set forth in the trial court's Opinion. ***See*** Trial Court Opinion, 3/6/20, at 7-8.